IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00507-REB-NYW

THE PHOENIX INSURANCE COMPANY,
THE TRAVELERS INDEMNITY COMPANY, and
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

      Plaintiffs,

v.

CANTEX, INC.,
LANDMARK AMERICAN INSURANCE COMPANY,
OLD REPUBLIC INSURANCE COMPANY,
CONTINENTAL INSURANCE COMPANY, and
AMERISURE INSURANCE COMPANY

      Defendants,

and

CANTEX, INC.,

      Third Party Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY, and
CONTINENTAL CASUALTY COMPANY,

      Third Party Defendants.

_____

**ORDER ON MOTIONS FOR PROTECTIVE ORDER**
_____

This matter comes before the court on Third Party Defendant Scottsdale Insurance

Company's Motion for Protetctive [sic] Order filed April 7, 2015 [#224] and Insurers'[1] Motion for Protective Order filed April 7, 2015 [#228] (collectively, "Motions for Protective Order"). These motions were referred to this Magistrate Judge pursuant to the Order of Reference dated February 27, 2013 [#3] and Order of Reassignment dated February 9, 2015 [#218], as well as the Memoranda dated April 7 and 8, 2015, respectively [#226, #229]. The court has reviewed the papers filed by the Parties, the applicable case law, and heard argument by the Parties during the telephonic discovery conference on April 13, 2015. Having been sufficiently advised of the premises, IT IS ORDERED that the Motions for Protective Order are hereby DENIED.

## BACKGROUND

Defendant Cantex, Inc. ("Cantex") sued Concrete Management Corp. ("CMC") and RBR Construction, Inc. ("RBR"), in an underlying construction defect case pending in Mohave County, Arizona. [#91]. In 2013, Plaintiffs the Phoenix Insurance Company, the Traveler's Indemnity Company, and Travelers Property Casualty Company of America (collectively, "Plaintiffs") defended RBR and CMC, under a reservation of rights, and then filed this declaratory judgment action requesting a declaration concerning their duty to defend and indemnify. [*Id.*] The case was then administratively closed pending the resolution of the underlying Arizona action. [#77].

After the verdicts in the underlying Arizona action were entered, Cantex entered an agreement in which RBR, CMC and Cantex agreed to the Judgment in Cantex's favor against RBR in the amount of $5,747,658.18, plus interest, and in RBR's favor against CMC in the

---

[1] The Insurers, for the purposes of the pending Motion for Protective Order, include Scottsdale Insurance Company, Landmark American Insurance Company, Amerisure Insurance Company, Continental Insurance Company, and Continental Casualty Company. [#228 at 1, n.1].

amount of $4,985,018.56, plus interest, and less the amount, if any, which CMC's insurers have reimbursed RBR's insurers for RBR's defense costs in the Underlying Litigation. [#106, at ¶ 26; #174 at ¶ 159]. CMC and RBR also assigned their claims against their insurers, including but not limited to Scottsdale Insurance Company ("Scottsdale") and Continental Casualty Company ("Continental") (collectively, "Third Party Defendants") to Cantex. [#174].

Upon re-opening of this case, Cantex then asserted a Third Party Complaint against the Third Party Defendants, asserting a count for breach of contract and a count for the tort of bad faith. [#174]. Scottsdale and Continental each filed its own Motion to Dismiss the bad faith claim contained in Third Party Complaint, with Continental joining in the motion filed by Scottsdale as well. [#189, #194, #204]. Cantex and the Insurers now come before the court with a discovery dispute over the breadth of discovery.

In particular, Cantex served a Rule 30(b)(6) Deposition Notice to the Insurers, which include sixteen topics. [#224-1]. Of the sixteen topics, the Insurers object to eight of them, namely, Topics 1, 5, 6, 7, 12, 13, 15, and 16. [#228]. The Insurers organize their objections into three categories: (1) topics on drafting, marketing, negotiating, underwriting, issuing, producing and signing the Policies and other issues involving underwriting files (Topics 1 and 15) [#228 at 1-2]; (2) topics on the Insurers' Decision on Duty to Defend (Topics 5, 6, 7, and 16) [*id.* at 2-4]; (3) discovery requests and 30(b)(6) topics on reserves and reinsurance [*id.* at 4-7]; and (4) discovery requests directed at the interpretation of the insurance contracts [*Id.* at 6-7]. Scottsdale states the categories as follows: (1) claims handling; (2) underwriting; and (3) reserve/reinsurance. [#224 at 3].

## ANALYSIS

I.  **Standard of Review**

The general test of discoverability is whether the materials or information sought by a discovery request "is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This is a broad standard meant to allow the parties to discover the information necessary to prove or disprove their cases. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). Upon a showing of "good cause" by the proponent of discovery, an even broader standard of "any matter relevant to the subject matter involved in the action" may be applied. *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009). However, when the relevance of a discovery request is not apparent on the face of the request itself, the proponent of discovery bears the burden of making an initial, rebuttable showing of relevance. *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203–WEB, 2007 WL 608343, at *8 n. 20 (D. Kan. Feb. 22, 2007).

In addition, the court considers the scope of the Rule 30(b)(6) topics as articulated. For a Rule 30(b)(6) deposition to function effectively, "the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute. *Berwick v. Hartford Fire Ins. Co.*, 2012 WL 573939, at *2 (D. Colo. Feb. 21, 2012). Against these standards, the court now turns to the categories of information in dispute between Cantex and the Insurers.

II.  **Topics 1 and 15**

Topics 1 seeks testimony related to the drafting, marketing, negotiating, underwriting, issuing, producing, and signing the Policy, and all communications relating thereto, including but not limited to all communications with RBR and/or any broker that participated in selling the

4

Policy to RBR [#224-1]. Topic 15 seeks information regarding the location, organization, and maintenance of claims records and underwriting files and any other information about claims regarding or relating to the Underlying Litigation and judgment resulting therefrom. In the Third Party Complaint, Cantex asserts claims for a breach of contract as well as the tort of bad faith in its Third Party Complaint against Scottsdale and Continental. [#174]. As an assignee of the insured, RBR, Cantex thus steps into the shoes of RBR (or CMC as the case might be) to assert bad faith claims that the insured had against its insurers. *See Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010). While there are pending Motions to Dismiss the bad faith claims, those have yet to be ruled upon, and therefore, the claims and underlying allegations remain in the case and subject to discovery.

Plaintiffs allege in the Third Party Complaint that Scottsdale and Continental breached their respective insurance contracts with the insured. While recognizing that the duty to indemnify is distinct and narrower than the duty to defend, the determination as to whether the insurers had a duty to indemnify RBR, and thus, Cantex as the assignee, is one that requires factual development as it is a question of fact. *Cyprus Amaz Minerals Co. v. Lexington Ins. Co.*, 74 P. 3d 294, 301 (2003). Cantex also alleges that Scottsdale and Continental breached their duties of good faith and fair dealing and their duty of equal consideration, and acted in bad faith by, among other things:

- Failing to indemnify RBR for the Judgment against it in the Underlying Litigation, despite knowing there was no reasonable basis for such denial of indemnification.

- Failing to fairly investigate the merits of RBR's tender of indemnification before denying RBR's claim under Scottsdale's and Continental Casualty's policies.

5

- Relying on policy provisions to deny RBR's tenders of indemnification, when Scottsdale and Continental Casualty knew such policy provisions previously had been ruled in other cases to be inapplicable to the circumstances of the Underlying Litigation.

- Creating pre-textual reasons to deny coverage.

- Failing to promptly provide a reasonable explanation of the basis in Scottsdale's and Continental Casualty's insurance policies relative to the facts of the Underlying Litigation for the denial of RBR's tenders of indemnification.

- Misrepresenting the facts of the Underlying Litigation so as to avoid coverage.

- Unreasonably investigating, evaluating, and processing RBR's claims, while knowing that such investigation, evaluation, and processing was unreasonable.

[#174 at ¶¶ 81-92]. These allegations of bad faith are also fact-driven. *See Goodson v. American Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 414-415 (Colo. 2004). Cantex also argues that the information is discoverable the Parties' understanding and intent related to the insurance contracts is relevant to the issue of what state law applies to the interpretation of the contracts. While counsel for the Insurers indicated that there is no issue with respect to the ambiguity of the contracts, Cantex's paper suggests otherwise. [#231 at 1-2].

The court does not pass on whether the evidence will ultimately be admissible, but rather, whether the requested information is reasonably calculated to lead to admissible evidence. Against this backdrop, the court cannot conclude at this juncture that the requested discovery is not reasonably calculated to lead to admissible evidence.

### III. Topics 5, 6, 7, and 16

Topics 5, 6, and 7 are directed at communications between the handling of claims

between the insured and/or Cantex; the communications with any other insurers for RBR, and the Insurers' knowledge and/or investigation of the facts, circumstances, and events regarding the Underlying Litigation, the judgment resulting therefrom, or the merits of RBR's requests for defense and/or indemnity coverage. [#224-1 at 4-5]. The Insurers argue that these topics should be precluded as "none of the insurers had a duty to defend RBR or CMC as there is no dispute Traverlers undertook the duty to defend RBR as an additional insured and CMC; and the duty to defend and indemnity are separate and distinct obligations." [#228 at 3]. Without citing any case law, the Insurers then conclude that "any discovery or evidence regarding the duty to defend is irrelevant to the duty to indemnify or even bad faith claims associated with an alleged breach of the duty to indemnify, or unreasonably cumulative or disproportionate in light of the discovery already provided and the issues in dispute." [*Id.*]. This court respectfully disagrees.

Information from the Insurers involving the handling of claims between the insured and evaluation of the Underlying Litigation may in fact, lead to admissible evidence related to whether there is a duty to indemnify. For instance, the manner in which the Insurers evaluated the Underlying Litigation may, in fact, reveal facts relevant to whether factually, the indemnity claims fall within the language of the applicable policy. For that reason, the court again, cannot at this juncture, find that the discovery is not relevant or disproportionate.

**IV.  Reserve/Reinsurance Information**

Finally, the Insurers' collective position on reserve/reinsurance information is unclear. Scottsdale argues that loss reserves cannot be used as sufficient evidence to establish bad faith. [#224 at 4]. In the collective motion that was joined by Scottsdale, it indicates that the Insurers have offered or now agree to produce reserve information and communications with reinsurers

for the time period commencing from the notice of loss to the commencement of this litigation. [#228]. While the court acknowledges that loss reserves alone may not be sufficient to overcome summary judgment, the question before the court today is not whether the reserve or reinsurance information is admissible, but rather whether it is discoverable.

In this case, Cantex now stands in the shoes of the insured, as an assignee under the relevant contracts. Therefore, it seems that this case is more appropriately considered a first-party case, until and unless the court determines that the claims of bad faith cannot stand against Scottsdale and Continental. The court notes that the court previously found that this litigation was prematurely initiated. [#71, #77]. Therefore, it may not be appropriate to limit discovery to only the time period between November 2010 and February 2013, particularly because Cantex's bad faith claims as to Scottsdale and Continental were not filed until the fall of 2014. [#169, #174]. However, without further information and based on the expedited basis of the consideration of the pending Motions for Protective Order, the court cannot determine whether the assertion of privilege is appropriate. Therefore, the court will DENY the Motion for Protective Order, but permit the Insurers to interpose objections based on privilege as they deem fit. The court, however, advises all parties that inappropriate objections may subject the party asserting such objections to sanctions.

## V.      Topics 1, 3, 9, and 10

The Insurers argue that the interpretation of the insurance policies present a question of law for the court, and do not implicate any factual issues. [#228 at 6-7]. Cantex argues that the parties' understanding of the policies is relevant because in the event of an ambiguity, any ambiguity is resolved in favor of coverage. [#231]. During the hearing, the Insurers argued that

8

there was no argument in the case that the language of the policies were ambiguous, and therefore any inquiry into the Parties' understanding is irrelevant.

A review of the actual language of the topics suggests that the topics are appropriate for this stage of discovery, in a case in which millions of dollars are at issue, given the fact that the court cannot, based on the record before it, determine that the topics are not reasonably calculated to lead to admissible evidence with respect to either the breach of contract or the bad faith claim. For instance, information about the "investigation, research, and analysis into the potential for the Policy to provide coverage for claims regarding or relating to the Underlying Litigation or judgment resulting therefrom," may yield relevant facts to determine whether the denial of the indemnity coverage was appropriate. Similarly, information about the "basis for Your decision to deny coverage regarding or related to the Underlying Litigation and judgment resulting therefrom, including but not limited to, Your interpretation of those portions of the policy You content preclude coverage for the Underlying Litigation and judgment resulting therefrom" also appears reasonably calculated to lead to evidence about the denial of indemnity coverage.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that:

(1)     Scottsdale's Motion for Protective Order [#224] is DENIED; and

(2)     The Insurers' Motion for Protective Order [#228] is DENIED.

DATED: April 14, 2015                      BY THE COURT:

                                           s/ Nina Y. Wang
                                           United States Magistrate Judge