**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-00507-REB-NYW

THE PHOENIX INSURANCE COMPANY,
THE TRAVELERS INDEMNITY COMPANY, and
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

      Plaintiffs,

v.

CANTEX, INC.,
LANDMARK AMERICAN INSURANCE COMPANY,
OLD REPUBLIC INSURANCE COMPANY,
CONTINENTAL INSURANCE COMPANY, and
AMERISURE INSURANCE COMPANY

      Defendants,

and

CANTEX, INC.,

      Third Party Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY, and
CONTINENTAL CASUALTY COMPANY,

      Third Party Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant Scottsdale Insurance Company's

Motion to Dismiss ("Motion to Dismiss") filed on January 9, 2015 [#194], which was referred to

the undersigned Magistrate Judge pursuant to the Order Referring Case dated February 27, 2013 [#3], the Memorandum dated November 21, 2014 [#195], and the Reassignment dated February 9, 2015 [#218].  The court heard oral argument on this Motion on June 8, 2015.  Having considered the briefs of the Parties, the applicable case law, and the comments offered by counsel at argument, the court respectfully RECOMMENDS that the instant Motion to Dismiss be GRANTED IN PART and DENIED IN PART.

## BACKGROUND AND PROCEDURAL HISTORY

For the purposes of considering the instant Motion to Dismiss, the court accepts as true all well-pleaded facts set forth in the Third Party Complaint filed by Defendant Cantex, Inc. ("Cantex").  This case arises from disputes between insurers over coverage related to a construction defect case tried in Mohave County, Arizona state court. Cantex sued and obtained judgment against RBR Construction, Inc. ("RBR") and Concrete Management Corporation ("CMC") for defective concrete in the amount of $5,747,658.18 plus interest and $ 4,985,018.15 plus interest, respectively ("Underlying Litigation").  [#174 at ¶ 5].  After the judgment, RBR, CMC, and Cantex reached an agreement whereby RBR and CMC assigned their rights under their respective insurance policies to Cantex.  [*Id.* at ¶ 6].  Because Scottsdale only issued policies to RBR, the implicated amount of judgment is $5,747,658.18.

Scottsdale issued to RBR excess/umbrella liability insurance policy number XLS0040128 with a term of coverage from February 21, 2007 to November 1, 2007 ("February 2007 Scottsdale Policy").  [*Id.* at ¶ 33].  It also issued to RBR excess/umbrella liability insurance policy number XLS0045526, with a term of coverage from November 1, 2007 to November 1, 2008 ("November 2007 Scottsdale Policy").  [*Id.* at ¶ 34].  Generally, excess insurance policies

are not triggered until the underlying insurance policies are exhausted by judgments or settlements as contemplated by the terms of the excess policy. Douglas Richman, Rights and Responsibilities of Excess Carriers, 78 Denv. L. Rev. 29, 30 (2000). Each policy has a limit of liability of $13 million in excess of the applicable underlying insurance for each occurrence and in the aggregate. [*Id.* at ¶ 36]. Cantex alleges that the judgment from the Underlying Litigation triggers the coverage obligations of Scottsdale, and that it tendered indemnity to Scottsdale no later than January 2014. [*Id.* at ¶¶ 60, 65].

Two of RBR's primary insurance carriers, Old Republic Insurance Company and Travelers Indemnity, have paid Cantex their respective policy limits of $1 million for the judgment arising from the Underlying Litigation. [*Id.* at ¶¶ 41, 52]. These policies, are primary policies associated with the February 2007 policy, rather than the November 2007 policy. [#198 at 5-6]. According to the Third Party Complaint, neither RBR nor insurers beyond Old Republic and Travelers have made any payment toward the amount of judgment. [#174 at ¶¶ 70, 71]. Cantex seeks, through its Third Party Complaint, coverage from Scottsdale under the issued excess policies and asserts claims for breach of contract and bad faith against Scottsdale. [*Id.* at 11-12].

On November 21, 2014, Scottsdale moved to dismiss both claims for failure to state a cognizable claim pursuant to Fed. R. Civ. P. 12(b)(6). The central issue, though not presented as such by the Parties, is when Cantex's claim for indemnity from Scottsdale accrues under the February 2007 policy – put another way, whether there is a justiciable case and controversy now, or only at some other time in the future. The court now turns to this question within the framework of Rule 12(b)(6).

**ANALYSIS**

## I.      Standard of Review

The standard under Rule 12(b)(6) is well-known.  A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A claim may be dismissed because it asserts a legal theory that is not cognizable as a matter of law, or because it fails to state sufficient facts to establish a legally recognized claim.  *See Golan v. Ashcroft*, 310 F.Supp.2d 1215, 1217 (D. Colo. 2004).  In deciding such a motion, the court must "'accept as true all well pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff.'"  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  The plaintiff must frame a complaint with enough factual matter, when taken as true, to suggest that he or she is entitled to relief.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation omitted).  While the court's analysis is typically focused on the allegations as set forth within the four corners of the complaint, the court may consider documents referred to in the complaint that are central to the claims without converting the motion to dismiss into one for summary judgment.  *Grynberg v. Koch Gateway Pipline Co.,* 390 F.3d 1276, 1279 n.1 (10th Cir. 2004).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

II.     **Application to Cantex's Claims**

A.     **Breach of Contract**

Scottsdale argues that Cantex has failed to allege facts sufficient to trigger coverage under Scottsdale's second-level excess policies, because its policies are in excess of $1 million primary policies and $2 million first-layer excess policies which must be aggregated over time. [#194 at 4].  It argues that its duty to indemnify RBR is not triggered unless and until $8 million in underlying limits (and other collectible insurance) exhaust, and because Cantex has failed to allege that the underlying policies have exhausted, Cantex's claim for breach of contract, and any bad faith claim flowing from it, must be dismissed.  [*Id.* at 6-7].  Scottsdale also contends that the $2 million of the judgment from the Underlying Litigation cannot erode indemnity limits, because it arises from an award of attorney's fees and costs, rather than substantive liability.  [*Id.* at 8-9].  In addition, Scottsdale argues that Cantex cannot pursue any excess coverage from it under the February 2007 Policy due to an Arizona state court decision, and that Cantex has acknowledged that the February 2007 Policy "follows form."  [*Id.* at 10].

Cantex contends that it has exhausted its primary policies citing to paragraphs 41 and 52 of its Third Party Complaint, that Scottsdale's coverage under the November 2007 Policy can be triggered by a loss above $3 million, and that while Scottsdale is not obligated to drop down and pay an amount below $3 million, Scottsdale is obligated to pay any judgment above the $3 million. [#198 at 4-5, 10].  It disagrees with Scottsdale's position that attorney's fees and costs cannot be used to erode indemnity limits.  [*Id.* at 2].  But it concedes that it may not, at this time, pursue any claims arising from the February 2007 Policy based on the ruling in Arizona state court.  [*Id.* at 6].

### 1. Horizontal Exhaustion

Scottsdale argues that this instant action must be dismissed because Cantex must collect $8 million in underlying policies before its coverage may apply.  However, Scottsdale cites no authority to support its assertion that under either Arizona or Texas law, as a matter of law, the insurance coverage must be satisfied horizontally before coverage can lie against Scottsdale. [#194 at 7-8].  *See also LSG Techs., Inc. v. U.S. Fire Ins. Co.*, Civil Action No. 2:07–CV–399–DF, 2010 WL 5646054, *10 (E.D. Tex. Sept. 2, 2010) (finding that (in the absence of the parties' offering specific authority with respect to horizontal versus vertical exhaustion) vertical exhaustion was the rule of law in Texas).  Nor does it point the court in the motion papers to any specific policy provision that mandates such a result.  Instead, the language provides:

> If there is any other collectible insurance available to the insured (whether such insurance is stated to be primary, contributing, excess or contingent) that covers a loss that is also covered by this Policy, the insurance provided by this Policy will apply in excess of, and shall not contribute with, such insurance. This Condition I. does not apply to any insurance policy purchased specifically (and which is so specified in such insurance policy) to apply in excess of this Policy.

[*Id.* at 5].  On the record before it, this court cannot determine, as a matter of law, that there are no set of facts under which Scottsdale's coverage would attach.

### 2. Attorney's Fees

Scottsdale also argues that there are no set of circumstances in which it could be liable for damages because the award of attorney's fees against RBR cannot be applied to reach the policy limits, citing *Columbia Casualty Co. v. U.S. Fidelity and Guaranty Co*. [#194 at 9]. But this court does not read *Columbia Casualty* to stand for the proposition that an award of attorney's fees never erodes policy limits.  178 Ariz. 104 (Ariz. Ct. App. 2004); [#194 at 8].  Instead, the policy language in this case:

> We will pay on behalf of the insured those sums in excess of the "Underlying Insurance" which the insured becomes legally obligated to pay as damages arising out of an occurrence or accident during the policy period stated in ITEM 2. of the Declarations (the POLICY PERIOD).

[#194 at 5] is similar to the language from the case cited by Cantex, *American Family Mutual Insurance Co. v. Spectre West Builders Corp.*:

> The insuring agreements provide that American Family will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

*Am. Family Mut. Ins. Co. v. Spectre W. Builders Corp.*, No. CV09-968-PHX-JAT, 2011 WL 488891, at *8 (D. Ariz. Feb. 4, 2011). The court in *Spectre West* found that attorney's fees that arose from the insured event could count towards policy limits. *Id.* Again, on the record before it, the court cannot conclude that there are no set of facts that can result in Scottsdale's liability.

### 3.      Pleading

Finally, Scottsdale also argues that Cantex's pleadings are deficient and cannot survive dismissal. Rule 8(a) of the Federal Rules of Civil Procedure only requires a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). To adequately plead a breach of contract under either Arizona or Texas law, Cantex must plead the existence of a valid contract, performance by plaintiff, a breach of that such contract by defendant, and resulting damages. *See Cashman v. Nationwide Ins. Co. of Am.*, No. CV 05-415-TUC-RCC, 2006 WL 908760, at *3 (D. Ariz. Apr. 6, 2006) (citing *Clark v. Compania Ganadera de Cananea, S.A.*, 95 Ariz. 90, 94, 387 P.2d 235, 238 (1963); *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (App. 2004)); *Philadelphia Indemnity Ins. Co. v. Creative Young Minds, Ltd.*, 679 F. Supp. 2d 739, 747 (N.D. Tex. 2009) (citing *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

In the Third Party Complaint, Cantex pleads all of these elements with respect to Scottsdale:  (1) that there is a valid contract [#174 at ¶¶ 34-35]; (2) that RBR complied with all of the conditions precedent to the Scottsdale policy [*id.* at ¶ 36] and that judgment entered against RBR for the amount of $5,747,658.18, plus interest triggered Scottsdale's contractual obligations [*id.* at ¶¶ 59, 60]; and (3) Scottsdale breached the contract by failing to pay for the amount of judgment less amounts previously paid by other insurers [*id.* at ¶¶ 66, 77].

Scottsdale understandably disputes that coverage has been triggered or whether any damages are due to Cantex.  But at their core, these arguments are substantive arguments as to whether Scottsdale owes Cantex coverage under the November 2007 policy, rather than arguments about whether Cantex sufficiently pleads facts supporting the claims.  A number of settlements have occurred in this case that are not before the court in the context of this instant motion that could have an effect on Scottsdale's liability, but those facts are not properly before the court now.  Therefore, the court respectfully recommends that Scottsdale's Motion to Dismiss with respect to the breach of contract claim be denied.

### B.  Bad Faith

To state a claim for bad faith under Arizona law, Cantex must demonstrate that Scottsdale "acted unreasonably and that [it] knew [its] conduct was unreasonable, or acted with such reckless disregard that such knowledge can be imputed" to Scottsdale.  *See Cashman*, 2006 WL908760, at *4.  Under Texas law, an insurer will be liable for bad faith when the "insurer knew or should have known that it was reasonably clear that the claim was covered."  *See Terry v. Safeco Ins. Co. of America*, 930 F. Supp. 2d 702, 710 (S.D. Tex. 2013) (citation and quotation omitted).  An insurer can also be liable for bad faith for failing to reasonably investigate a claim.

*Id.*  In Paragraph 86 of the Third Party Complaint, Cantex sets out the various reasons why Scottsdale failed to properly handle its/RBR's claim.  [#174 at ¶ 86].  Scottsdale argues that it cannot be liable for bad faith because no liability can attach before the underlying policies were exhausted, and its duty to participate has not yet been triggered.  [#194 at 12-13].  It also asserts that as a matter of law, the duty of good faith has not been extended to an assignee of the insured, rather than the insured alone.  [*Id.* at 13].

The court will address the argument with respect to whether a duty of good faith and fair dealing can lie against Scottsdale.  The cases cited by Scottsdale stand for the proposition that a third party cannot directly sue an insurer for breach of good faith and fair dealing. *See Chappin v. TransAmerica Ins. Co.*, 731 S.W.2d 728, 730 (Tex. App. 1987); *Smith v. Allstate Ins. Co.*, 202 F. Supp. 2d 1061, 1067 (D. Ariz. 2002).  They do not expressly preclude an insured from assigning a claim of bad faith to a third party, in exchange for a covenant not to execute or other terms.  While other sources not cited by the Parties certainly suggest that Texas law does preclude such a claim, those same sources indicate that Arizona law allows assignment of bad faith claims against insurers.  *See* International Society of Primerus Law Firms, Compendium of Principles of Law Regarding Bad Faith in the Fifty States and D.C.,

http://www.primerus.com/files/PRI_InsuranceCoverageAndBadFaithGroup2010BadFaithCompendium_FNL-1.pdf, at 15-18 (Arizona) and 226-232 (Texas) (2010).  But the choice of law is an issue that is expressly not before the court.  [#194 at 7].

Therefore, the court concludes that it cannot determine that Cantex is precluded from any bad faith claim as a matter of law, and respectfully recommends that the Motion to Dismiss be denied as to the claim for bad faith.

### C.      Case and Controversy

Before concluding, the court makes one final note.  During oral argument, counsel for Scottsdale agreed that even if the Motion to Dismiss was granted, the claims would be dismissed without prejudice and Cantex could refile once the conditions precedent were met (if ever).  But the papers filed by Scottsdale and Cantex underscore that there is little agreement on what conditions precedent exist that would need to be satisfied prior to filing suit.  The court finds that this action is the appropriate vehicle to address these coverage issues between Cantex and Scottsdale, and the current dispute presents an actual case or controversy to justify this court's jurisdiction over such action.  *Cf. E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177-78 (2d Cir. 2001) (holding that there was a practical likelihood that the high level excess carriers' policies would be reached, and therefore, the claims against such high level excess carriers presented an actual case and controversy).

### CONCLUSION

For the reasons set forth herein, the court respectfully RECOMMENDS that:

(1)      The Motion to Dismiss filed by Scottsdale Insurance Company be GRANTED IN PART, with respect to policy number XLS0040128;

(2)      Cantex's breach of contract and bad faith claims as set forth in the Third Party Complaint based on policy number XLS0040128 be DISMISSED WITHOUT PREJUDICE;

(3)      The remainder of the Motion to Dismiss be DENIED IN PART.[1]

---

[1] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1);

DATED:  July 13, 2015                        BY THE COURT:


                                             s/ Nina Y. Wang
                                             United States Magistrate Judge

---

Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).