**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 13-cv-00507-REB-NYW

THE PHOENIX INSURANCE COMPANY,
THE TRAVELERS INDEMNITY COMPANY, and
THE TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

      Plaintiffs,

v.

**CANTEX, INC.**,
CONCRETE MANAGEMENT CORP.**,**
LANDMARK AMERICAN INSURANCE COMPANY,
**CONTINENTAL INSURANCE COMPANY**, and
**AMERISURE INSURANCE COMPANY**,

      Defendants,

and

**CANTEX, INC.**,

      Third-Party Plaintiff,

v.

**SCOTTSDALE INSURANCE COMPANY**, and
**CONTINENTAL CASUALTY COMPANY**,

      Third-Party Defendants,

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF THIRD-PARTY DEFENDANT SCOTTSDALE**
                              **INSURANCE COMPANY**

---

**Blackburn, J.**

The matter before me is **Third-Party Defendant Scottsdale Insurance Company's Motion for Summary Judgment** [#278],[1] filed September 17, 2015.  I grant the motion and dismiss the corresponding apposite third-party breach of contract claim.

## I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(a); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  Once the motion has

---

[1]  "[#278]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Id* at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Concrete Works***, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999); ***Nutting v. RAM Southwest, Inc.***, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III.  ANALYSIS

This lawsuit arises from defects in concrete work that occurred in connection with the construction of a manufacturing and distribution facility in Kingman, Arizona, for third-party plaintiff Cantex, Inc. ("Cantex"). RBR Construction, Inc. ("RBR") served as construction manager and general contractor for the property. The project ultimately involved the installation of some 480,000 square feet of exterior concrete.

However, beginning in mid-2007, the concrete began to "crack excessively, spall,

and otherwise deteriorate." (**Third-Party Complaint Against Scottsdale** ¶ 3 at 1-2 [#174], filed October 21, 2014.)  Alleging that these damages were due to defective workmanship to the exterior concrete and supporting structures, Cantex sued RBR in Arizona state court in January 2011.  Following a bench trial in September 2013, the court found in favor of Cantex on its claims against RBR for breach of contract, breach of warranty, and breach of the implied covenant of good faith and fair dealing, and entered judgment in favor of Cantex in excess of 5.7 million dollars, including some two million dollars in attorney fees.

As a result of post-judgment negotiations, RBR assigned its indemnity rights under its applicable insurance policies to Cantex.  Pursuant to that assignment, Cantex has asserted a third-party claim for breach of contract against Scottsdale Insurance Company ("Scottsdale") under a second level excess insurance policy issued to RBR covering the period from November 1, 2007, to November 1, 2008.[2]  Scottsdale, as a third-party defendant, now seeks summary judgment as to this claim.

However, before considering the substantive issues, I must address the choice of law question implicated by the motion. A federal court sitting in diversity applies the substantive law, including the choice of law rules, of the state in which it sits.  ***Klaxon Co. v. Stenter Electrical Manufacturing Co.***, 313 U.S. 487, 495-97, 61 S.Ct. 1020, 1021-22, 85 L.Ed.2d 1477 (1941); ***Pepsi–Cola Bottling Co. of Pittsburg, Inc. v.***

---

[2] Cantex's breach of contract claim under a second Scottsdale policy has been dismissed (***see* Order Overruling Objections to and Adopting Recommendation of United States Magistrate Judge** ¶ 3.a. at 3 [#269], filed September 2, 2015), and its claim for bad faith was dismissed by stipulation of the parties (***see* Stipulation for Dismissal Without Prejudice of Cantex Inc.'s Bad Faith Claim Against Scottsdale Insurance Company** [#247], filed June 18, 2015).

*Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).  In breach of contract cases,

Colorado courts employ the "most significant relationship" test enunciated in section 188

of the Restatement (Second) of Conflict of Laws.  *Berry & Murphy, P.C. v. Carolina*

*Casualty Insurance Co.*, 586 F.3d 803, 808 (10th Cir. 2009).  That standard requires

the court to consider a number of factors in making this determination, including, "(a) the

place of contracting; (b) the place of negotiation of the contract; (c) the place of

performance; (d) the location of the subject matter of the contract; and (e) the domicile,

residence, nationality, place of incorporation and place of business of the parties."

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1969).  "These contracts are

to be evaluated according to their relative importance with respect to the particular

issue."  *Id.*

Cantex maintains that its third-party claim for breach of contract should be

interpreted in accordance with Arizona law, as the insured facility was located there.  In

this regard, it points to section 193 of the Restatement, which provides:

> The validity of a contract of fire, surety or casualty insurance
> and the rights created thereby are determined by the local
> law of the state which the parties understood was to be the
> principal location of the insured risk during the term of the
> policy, unless with respect to the particular issue, some other
> state has a more significant relationship under the principles
> stated in § 6 to the transaction and the parties, in which
> event the local law of the other state will be applied.

*Id.* § 193.  However, because I disagree with Cantex's premise, I reject its conclusion.

Assuming *arguendo* that this section is even applicable to a policy that does not

qualify as a "contract of fire, surety or casualty insurance," the insured risk under this

excess insurance policy was not the workmanship of the underlying construction work

but the danger, in the event a claim was made under the underlying policies, that coverage would be insufficient.  *See* International Risk Management Institute ("IRMI") Online, Glossary of Insurance & Risk Management Terms, Terms, ***Excess Liability Policy*** (excess insurance policy is "[a] policy issued to provide limits in excess of an underlying liability policy. . . . [I]ts sole purpose is to provide additional limits of insurance.") (available at https://www.irmi.com/online/insurance-glossary/terms/e/excess-liability-policy.aspx) (last accessed November 5, 2015.)  That risk bears no direct relationship to the work performed on the Arizona facility.  The court therefore returns to the most significant relationship test, as specifically contemplated by Restatement section 193 itself.

Considering the relevant factors of Restatement section 188, I find and conclude that Texas bears the most significant relationship to Scottsdale's excess insurance policy.  The Restatement provides that "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(3) (1969).  *See also* ***Budd v. American Excess Insurance Co.***, 928 F.2d 344, 347 (10th Cir. 1991) ("Insurance policies generally are interpreted under the law of the state where the policy was issued.").  Here, the contract indisputably was negotiated in Texas, where RBR is located, and any payment thereunder plainly was intended to inure to the benefit of RBR at its principal location.[3]  Thus Texas law should govern resolution of Cantex's breach of contract claim.

---

[3] In addition, the policy includes two Texas-specific notices.  (***See* Scottsdale Motion App.**, Exh. 2 at 16 of 47, 44 of 47.)

6

Under Texas law, insurance contracts are construed according to the plain meaning of their terms. ***Puckett v. U.S. Fire Insurance Co.***, 678 S.W.2d 936, 938 (Tex. 1984); ***Emscor, Inc. v. Alliance Insurance Group***, 804 S.W.2d 195, 197 (Tex. App. – Houston [14[th] Dist.] 1991, no writ).  The Scottsdale policy provides that

> This Policy is excess insurance and, except as otherwise stated in this Policy, follows the terms, conditions, exclusions, definitions and endorsements of the "Underlying Insurance" described in ITEM 5. of the Declarations.
>
> A. We will pay on behalf of the insured those sums in excess of the "Underlying Insurance" which the insured becomes legally obligated to pay as damages arising out of an occurrence or accident during the policy period stated in ITEM 2. of the Declarations (the POLICY PERIOD).

(**Scottsdale Motion App.**, Exh. 2 ¶¶ I & I.A. at 6 of 47.)  "'Underlying Insurance' means any policy or policies of insurance as listed in ITEM 5. of the Declarations including any renewal or replacement of such policies." (***Id.*** ¶ III at 7 of 47.)  The Underlying Insurance on Scottsdale's excess policy includes the primary policy issued by Continental Casualty Company ("CCC), with policy limits of two million dollars, and an umbrella policy written by Continental Insurance Company ("CIC"), with policy limits of one million dollars. (***See id.*** at 3 & 5 of 47.)  The excess insurance available under the policy "will apply after the insured or the insured's underlying insurer has paid or has been held to pay the full amount of the underlying limits of insurance." (***Id.*** ¶ V.G. at 8 of 47.)  In addition,

> [i]f there is any other collectible insurance available to the insured (whether such insurance is stated to be primary, contributing, excess or contingent) that covers a loss that is also covered by this Policy, the insurance provided by this Policy will apply in excess of, and shall not contribute with,

such insurance.

(*Id.* ¶ V.I at 9 of 47.)

Scottsdale maintains that its duty to indemnify RBR has not been triggered because the limits of the underlying insurance have not yet been exhausted.[4]  I concur. Cantex suggests that, because the "other insurance" provision of the policy contemplates the insurance "will apply," *inter alia*, "after the insured . . . has been held to pay the full amount of the underlying limits of insurance" (*id.* ¶ V.G. at 8 of 47), the Scottsdale policy does not require underlying insurance be exhausted.  I reject this argument.  The provisions of the policy must be read together, to the fullest extent possible, "without isolating or giving priority to any one phrase, sentence or section." *Emscor Manufacturing*, 879 S.W.2d at 905-06.  Thus, Cantex cannot read out the policy provision contemplating that coverage will be in excess of any other collectible insurance available to RBR.  (*Id.* ¶ V.I. at 9 of 47.)

Moreover, Cantex's argument would require the court to ignore the "unique" purpose of excess insurance: "to pick up where primary coverages end, providing extended protection in a time when verdicts can be exceedingly high." *Carrabba v. Employers Casualty Co.*, 742 S.W.2d 709, 714 (Tex, App. – Houston [14th Dist.] 1987, no writ).  In conformity with this understanding of the nature of excess insurance, Texas courts abide by the majority rule that

---

[4]  I reject Cantex's implicit suggestion that Scottsdale's motion is infirm as merely a reiteration of its prior motion to dismiss, which was denied.  The standard for resolution of Cantex's claim at the summary judgment stage is quite different, and more exacting in terms of the quantum of proof Cantex must come forward with, than those applicable to a motion under Rule 12(b), as learned counsel undoubtedly knows.

> where an umbrella policy provides coverage for a loss in
> excess of the underlying policies listed in its schedule and in
> excess of the applicable limits of any other underlying
> insurance collectible by the insured, all such other collectible
> insurance must be exhausted before liability attaches under
> the umbrella policy.

*Id.* at 715.  Applying that rule, there is no genuine dispute of material fact regarding whether the limits of the underlying insurance identified in the Scottsdale policy have been exhausted – they have not.[5]  "Texas case law is clear that all primary policies must be exhausted before excess policies become liable."  ***St. Paul Mercury Insurance Co. v. Lexington Insurance Co.***, 888 F. Supp. 1372, 1381 (S.D. Tex. 1995).  Thus it makes no difference whether exhaustion under the Scottsdale policy is "horizontal" or "vertical,"[6] since under either rubric, the failure to exhaust the full limits of the underlying primary insurance policies identified in the Scottsdale excess policy dooms Cantex's claim.

***Scottsdale Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania***, 577 Fed. Appx. 854, 857 (10th Cir. Sept. 2, 2014).[7]

Nor has Cantex substantiated its argument that the attorney fees awarded against RBR erode (and thus ostensibly exhaust) the limits of primary coverage.  As explained

---

[5]  The underlying policies collectively provided coverage of $3 million.  CIC and CCC paid Cantex $1 million to settle the claims against them.

[6]  Under Texas law "[h]orizontal exhaustion means that each primary insurance triggered by a continuous loss must indemnify the policyholder to the full extent of its policy limits before any excess insurer can be required to pay," while "vertical exhaustion provides that each excess policy in a triggered year is required to contribute to indemnification as soon as its particular underlying coverage is exhausted, even if other triggered primary policies (covering other periods) remain 'untapped.'"  ***Scottsdale Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania***, 577 Fed. Appx. 854, 856-57 (10th Cir. Sept. 2, 2014) (interpreting Texas law; internal citations omitted).

[7]  For this same reason, the recent settlement of Cantex's crossclaim against Amerisure Insurance Company for an as-yet undisclosed amount (*see* **Notice of Settlement** [#335], filed November 2, 2015) does not alter the resolution of the instant motion, as it does not change the fact that the limits of all underlying primary insurance have not been exhausted.

by the United States Court of Appeals for the Fifth Circuit, interpreting Texas law,

> [l]iability insurance policies often have two components:
> defense and indemnity.  In many liability policies, the policy
> limits refer only to the indemnity obligation (i.e., the duty to
> pay covered claims), and the obligation to defend a liability
> suit is not capped by the policy limits.  In an eroding policy,
> by contrast, the insurer's payments to defense counsel to
> defend the liability suit count against the policy limits.

***North American Specialty Insurance Co. v. Royal Surplus Lines Insurance Co.***,

541 F.3d 552, 559 (5th Cir. 2008).  Thus, to determine whether any attorney fees

awarded against RBR would be counted toward the policy limits of the underlying

insurance, the court would have to know the relevant provisions of those policies.  Yet

Cantex has not submitted copies of either of the underlying policies – nor any other

evidence which might assist the court in making this crucial determination.  As Cantex

has failed to come forward with any such relevant evidence to support its claim,

Scottsdale is entitled to summary judgment.[8]

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Third-Party Defendant Scottsdale Insurance Company's Motion for Summary Judgment** [#278], filed September 17, 2015, is granted;

2.  That Cantex's third-party claim for breach of contract against third-party

---

[8]  My determination in this regard moots Scottsdale's recently filed "counterclaim" against CIC and CCC, whereby Scottsdale seeks a declaration that it did not breach the contract of insurance and an order dismissing Cantex's third-party complaint.  That relief having been granted herein, the **Motion To Dismiss of Third-Party Defendants Continental Casualty Company and Continental Insurance Company** [#338], filed November 4, 2015, will be denied as moot and that claim dismissed.

defendant Scottsdale is dismissed with prejudice;

      3.  That Cantex's third-party claim for bad faith against third-party defendant Scottsdale is dismissed without prejudice pursuant to my **Order Overruling Objections to and Adopting Recommendation of United States Magistrate Judge** ¶ 3.a. at 3 [#269], filed September 2, 2015;

      4.  That Scottsdale's "counterclaim" for declaratory relief against CIC and CCC asserted in **Scottsdale Insurance Company's Answer and Counterclaim to Third-Party Complaint of Cantex, Inc.** ¶¶ 31-39 at 6-7 [#276], filed September 16, 2015, is dismissed as moot;

      5.  That the following motions are denied as moot:

            a.  **Cantex Inc.'s Motion To Strike the Expert Report and Preclude Testimony of Allan D. Windt Pursuant to Fed. R. Evid. 403 & 702** [#273], filed September 11, 2015; and

            b.  **Motion To Dismiss of Third-Party Defendants Continental Casualty Company and Continental Insurance Company** [#338], filed November 4, 2015;

      6.  That the combined Final Pretrial Conference and Trial Preparation Conference set November 12, 2015, at 11:00 a.m., and the trial set to commence on November 30, 2015, are vacated;

      7.  That at the time judgment enters,[9] judgment shall enter on behalf of third-party

---

[9] Judgment shall enter after as soon as practicable after receipt of the dismissal documents memorializing the settlement of Cantex's cross-claims against Amerisure Insurance Company. (**See Minute Order** [#336], filed November 3, 2015.)

defendant, Scottsdale Insurance Company, and against third-party plaintiff, Cantex, Inc., as follows:

      a.  That judgment with prejudice shall enter on Cantex's third-party claim against Scottsdale for breach of contract; and

      b.  That judgment without prejudice shall enter on Cantex's third-party claim against Scottsdale for bad faith; and

    8.  That at the time judgment enters, third-party defendant Scottsdale is awarded its costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

    Dated November 9, 2015, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge